Nation v. Tulley.

---

JAMES M. NATION, *Plaintiff*, v. MARK TULLEY, *as State Treasurer, etc.*, and W. E. DAVIS, *as State Auditor, etc., Defendants.*

No. 17,866.

SYLLABUS BY THE COURT.

1. STATE AUDITOR—*Registration of Public Utility Bonds—Fees.* Section 744 of the General Statutes of 1909 requires registration with the state auditor of public utility bonds issued by cities, "and said auditor shall be entitled to a fee of not exceeding fifty cents for each bond so registered in his office." *Held*, that such fees collected by the plaintiff when auditor belonged to him and he was not required by section 9007 of the General Statutes of 1909 to account for or turn them over to the state treasurer.

2. FEES—*Paid to State Treasurer by Mistake—Recovery Back.* The plaintiff, while holding the office of state auditor, collected such fees and by mistake paid them to the state treasurer who credited them to the general fund. An act appropriating to the plaintiff the sum so paid, on condition that his right thereto first be determined by this court, was passed by the legislature and such appropriation was vetoed;

the veto message inferentially expressing a willingness that the plaintiff's right to the money should be judicially determined. *Held,* that permission to sue the state or exemption from suit not having been expressly given or waived the plaintiff should look to the legislature rather than to the court for relief.

Original proceeding in mandamus. Opinion filed February 10, 1912. Alternative writ denied.

*James M. Nation,* for the plaintiff; *E. W. Grant,* of counsel.

*John S. Dawson,* attorney-general, and *S. M. Brewster,* special assistant attorney-general, for the defendants.

The opinion of the court was delivered by

WEST, J.: The plaintiff was state auditor from January 14, 1907, to January 9, 1911. His salary was fixed by statute at $2500 a year. Section 744 of the General Statutes of 1909 provides that bonds issued by cities for public utilities shall be registered with the state auditor and bear his certificate of registration, "and said auditor shall be entitled to a fee of not exceeding fifty cents for each bond so registered in his office." The plaintiff collected under this provision $2843.50, and he alleges that he paid this to the state treasurer by mistake and that the treasurer converted it into the general revenue fund of the state but that it never rightfully belonged there and is and has been the property of the plaintiff, and having made a proper demand he asks that the plaintiff be required by mandamus to return the money to him. It appears that the legislature by chapter 58 of the Laws of 1911 appropriated this sum out of the general revenue fund to repay the plaintiff, providing, however, that the warrant should not be drawn by the auditor nor paid by the treasurer until plaintiff's right to retain the fees should have been determined by this court, authorizing plain-

tiff to have the question of his right determined by
mandamus or other proper action and providing that
he was not to be prejudiced by the fact that such fees
were voluntarily paid into the state treasury by him.
This appropriation was vetoed by the governor, who in
the message made the following statement:

"There seems to be so much doubt about the rights
of the ex-state auditor to these fees that he did not feel
warranted in collecting them during his term of office.
His right to this money can only be determined by a
decision of the court, and it will be sufficient time to ap-
propriate funds to cover this item when the court de-
cides to whom it belongs."

The answer alleges that the fees under the act of
1905 when collected belonged to the state, that under
section 9007 of the General Statutes of 1909 it was
the duty of the auditor to account for and pay these
fees to the treasurer for the benefit of the general
revenue fund.

Since 1879 section 8867 of the General Statutes of
1909 has been in force and reads as follows:

"The auditor shall keep an official seal, which shall
be used to authenticate all writings, papers and docu-
ments required by law to be authenticated from his
office, and copies of all papers, writings and documents
legally deposited in his office, which, when properly
certified and so authenticated, shall be received in evi-
dence in the same manner and with like effect as the
originals. He shall, when required by any person, make
out a copy of any record, document or paper deposited
or kept in his office, and shall attach thereto his cer-
tificate and the seal of his office. He shall receive for
making any such copy, ten cents per folio; for his cer-
tificate and seal, fifty cents."

Until the passage of the act of 1905 (Gen. Stat. 1909,
§§ 744-747), the law did not require registration of
utility bonds with the auditor and hence no fees could
be charged therefor. It is argued that after its enact-
ment and such bonds were required to be registered

the auditor was required to charge for his certificate and seal the fifty cents provided for in section 8867, just quoted. But the only reasonable construction which the section will justify is that the charge of fifty cents is to be made for his certificate and seal when used to authenticate any writing, paper or document required to be authenticated from his office or legally deposited in his office or any certified copy of such document. It will be observed that the act of 1905 requires that when utility bonds are registered they shall bear the auditor's certificate of registration. This is not a certificate of any document required by law to be authenticated from his office or of a copy of any paper or document deposited in his office, but is a mere authentication of the fact that the bond has been registered in his office.

Sections 744-747 of the General Statutes of 1909 do not merely authorize the auditor to collect or receive a certain fee for registering a utility bond but specifically provide that upon its registration he shall be entitled to a fee not exceeding fifty cents. Had the legislature intended that the auditor should collect a fee for the state it could easily have indicated such intention, which was not done by the use of the language employed, neither is it reasonable to presume that the legislature, intending the state to have the benefit of a fee, would have left it to the whim or discretion of the auditor, as was done in this case, whether he should charge fifty cents, or a less sum, or nothing. Our attention has been called to no statute requiring the collection of fees for the benefit of the state which leaves the amount discretionary with the collecting officer. We conclude and decide, therefore, that under this provision it was the auditor's duty to register upon the proper record or book of his office each utility bond presented for registration and to place upon such bond his certificate authenticating the fact that such registration had been made, whereupon he was entitled to

such fee as he desired, not exceeding fifty cents, and that when collected it belonged to him and not to the state.

This brings us to the consideration of another statute on which the right to retain these fees depends. In 1891, chapter 181 of the Laws of that year was enacted to establish the salaries of state officers, their assistants, clerks, judges, officers and employees of the legislature; section 16 thereof being as follows:

"All fees received by any of the salaried officers mentioned in this act shall be accounted for in a monthly detailed statement to the state treasurer, at which time all such fees shall be paid into the general fund of the state treasury; the officer to make sworn detailed statement to the auditor of state, and take duplicate receipts from the treasurer, one of which he shall retain, and shall deliver the other to the auditor of state, to be filed in his office." (Gen Stat. 1909, § 9007.)

In the act appropriating salaries for state officers (Laws 1909, ch. 5) section 4 reads as follows:

"It shall be the duty of all salaried state officers, their assistants and clerks, and they are hereby required, as provided in section 6091, General Statutes of 1901, to account for and deliver to the treasurer of state all fees received by them, and to account for and turn over to the treasurer of state all fees collected by them, or either of them, for making certified copies of any and all documents, requisitions, or of any and all other papers for which they may charge and receive a fee; which said fees shall be credited by the treasurer of state to the general revenue fund of the states as is now provided for by law." (Gen. Stat. 1909, § 9007.)

An identical provision was inserted in the appropriation act of 1907 (Laws 1907, ch. 2, § 4), but under the constitution prohibiting a change in compensation during the auditor's term (Const. art. 1, § 15) this could not affect his income until the beginning of his term in 1909, if at all. In the appropriation act of 1911, the legislature instead of continuing this provision, as had been done for two sessions, made a differ-

ent one expressly requiring all salaried state officers to account for and turn over to the state treasurer all fees collected by them "for any service required of them or either of them by law or that may hereafter be required of them by law for which they may charge and receive a fee." (Laws 1911, ch. 2, § 7.)

The question, therefore, is whether section 4 of chapter 5 of the Laws of 1909 or section 4 of chapter 2 of the Laws of 1907 required the auditor to account for and pay over to the state treasurer these particular fees. The construction which the respondents contend for is that the auditor is required by this provision to account for and turn over all fees received by him regardless of their kind or source or ownership, while the plaintiff's contention is that the provision fairly construed refers only to fees collected by him for making certified copies of documents, requisitions or other paper for which a fee may be charged and received.

The duty resting upon salaried state officers under this section is to account for and deliver to the state treasurer all fees received by them "as provided in section 6091, General Statutes of 1901."

The latter section certainly had no reference to fees arising upon the registration of utility bonds, because such registration was not then required. It is plain that the intention of section 6091 was to require the turning over of all fees which belonged or which by legislative intention should go to the state, and it seems fairly clear that such was the intention of the section inserted in the appropriation acts of 1907 and 1909.

In an opinion by Attorney-general Jackson, January 7, 1911, he held the latter construction correct and that the section now under consideration has no application to the fees here involved. While a strictly literal construction of the language used would make it mean all fees from whatever source or to whomsoever belonging, it is more in harmony with reason and the probable facts of the case to hold that the legislature simply in-

tended that the language used in making an appropriation for the salaries of state officers should not be construed to permit them to retain any fees required by law to be accounted for and turned over to the state treasurer. The section having been given this construction by the chief law officer of the state and such construction having apparently been followed by the legislature of 1911 in an attempt to reimburse (conditionally) the plaintiff for the fees involved and in the material change made in the wording of section 4 of the appropriation act of 1909 (Laws 1909, ch. 5), we are inclined to the opinion and hold that the views thus expressed and indicated were correct and that the fees in question when collected by the plaintiff became and were his property. To hold otherwise would involve the manifest absurdity that under an act simply permitting the auditor to charge nothing or any sum up to fifty cents for each utility bond registered, and providing that he should be entitled to whatever fee he saw fit to collect, he would owe no duty to the state whatever to collect; but upon exercising his discretion to charge whatever he saw fit, not exceeding fifty cents a bond, a duty would thereby arise to turn into the state treasury a discretionary fee to which the legislature had said he should be entitled. In *Nolan v. Ellis County*, 65 Kan. 57, 68 Pac. 1068, it was held that the county attorneys were entitled to retain a fee of $25 for each count upon which a defendant should be convicted under the prohibitory law, notwithstanding the fact that section 8 of the salary act (Gen. Stat. 1909, § 3662), provided that the salaries should be allowed as full compensation for all services performed. It was held that this language meant all services performed for the county. It was there pointed out that the statute afforded no such exception as in the case of the county clerk who, under another statute, is allowed a salary "in full for all services by law required to be performed in their respective offices whatsoever."

(p. 59.)   Here it may be suggested that in the act pre-scribing the salary of the state auditor no provision is found that it shall be in full compensation for all services performed.

The case of *Nolan v. Ellis County,* supra, was decided in 1902.   The legislature passed the act of 1905 with presumptive knowledge of this decision, and instead of providing that a fee not exceeding fifty cents might be charged by the auditor or collected by the auditor, or that such fee should be collected by him for the state, simply and only provided that upon registration of such a bond the auditor should be entitled to a fee not exceeding fifty cents.

" 'Entitle' is a strong word and signifies a claim or right."   (*Commonwealth v. Moorhead,* 7 Pa. Co. Ct. R. 513, 517.)

"Entitle.   To give a claim, right or title to."   (15 Cyc. 1055.)

"Entitle.   1. To give a title to.  .  .  .   2. To give a right or title to."   (Webster's New Int. Dict.)

The plaintiff argues that the action should not be construed as one against the state, for the reason that the money never belonged to the state and was never rightfully in the treasury, and that it was and is the duty of the treasurer to return it; that conceding it to be in effect a suit against the state, the right of exemption from suit has in this case been waived.   If the action be regarded as personal against the respondent holding the office of treasurer, then the ordinary remedy afforded by the law is ample without resorting to the extraordinary writ of mandamus.   Here the money is actually in the treasury and the state insists that it is rightfully there, and it is conceded that it came there through the voluntary though mistaken act of the plaintiff.   While no point is made as to voluntary payment, still funds so circumstanced should be withdrawn by legislative appropriation rather than by judicial order.

"If the money were to be regarded as the money of the plaintiff in the hands of the defendant as an indi-

vidual, it is obvious the petitioner is not entitled to the writ prayed for. His common-law remedies are ample for the enforcement of his rights." (*Weston v. Dane,* 51 Maine, 461, 464.)

After appropriating the amount sued for the legislature of 1911 (Laws 1911, ch. 58, § 1, item 66) expressly provided that a warrant for this amount should not be drawn nor paid until the rights of the auditor to retain the fees should have been determined by this court, "it being the purpose of the legislature to have the right of the said Nation to said fees adjudicated." It is suggested that the veto could affect only the appropriation (Const. art. 2, § 14) and that its language indicated a willingness on the part of the governor that the right to the fees might be adjudicated. But without the appropriation there could be nothing to which the apparent consent of the legislature could attach or be applied. As said in *Asbell v. The State,* 60 Kan. 51, 55 Pac. 338, and quoted in *The State v. Appleton,* 73 Kan. 160, 164, 84 Pac. 753:

"To compel a state, upon theories of doubtful statutory interpretation, to appear as defendant suitor in its own courts, and to litigate with private parties as to whether it had abnegated its sovereignty or its right of exemption from suit, would be intolerable. . . . In its grace and favor it may waive its sovereign right of exemption, but the waiver must be made in express terms, or at least in terms so clear and unambiguous as necessarily to force upon the mind the implication of waiver." (60 Kan. 55.)

The waiver was a part of the appropriation in this case, and when the appropriation fell the waiver fell with it.

Therefore the plaintiff will have to look to the legislature for relief.

The alternative writ is denied.