REUST v. OKLAHOMA CITY et al.

No. 32510. Feb. 25, 1947.

Rehearing Denied March 18, 1947.

178 P. 2d 92.

A. E. Pearson and Hugh E. Tyson, both of Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, and P. J. Demopolos, Asst. Municipal Counselor, both of Oklahoma City, for defendant in error City of Oklahoma City.

RILEY, J. This is an appeal from an adverse judgment in an action commenced by plaintiff in error, W. A. Reust, against defendants in error, the city of Oklahoma City and Anderson-Prichard Oil Corporation.

In March, 1942, the city, by condemnation proceedings, acquired a right of way 250 feet wide across a tract of land owned by plaintiff, for the construction and maintenance of a canal running from the North Canadian river to Bluff

creek reservoir. The purpose of the canal was to convey water from the North Canadian river into the Bluff creek reservoir, as a part of the water system owned and operated by the city. The canal extends across the Canadian-Cimarron Divide, separating the drainage areas of the North Canadian and Cimarron rivers. Plaintiff's property is on the northeast, or Cimarron, side of the divide. The canal, through plaintiff's land, is from 23 to 25 feet deep.

In excavating the canal, the city encountered a water-bearing sand on the Canadian side of the divide. It became necessary to devise a method of underdrainage to dispose of the water. This situation led to the execution of a written contract between plaintiff and the city.

By the contract, plaintiff granted to the city "an easement and right of way" over and across plaintiff's land, with right of ingress and egress for the purpose of laying and operating a tile water drainage line to drain water from the city's canal to a lake owned by plaintiff, described as "north lake." The contract then provides.

"As a part and parcel of this agreement and easement, it is agreed that party of the second part (the city) shall have the right to break the dam and drain the water now impounded in the south lake upon said quarter section.

"It is further agreed that party of the first part (plaintiff) will lower the spillway upon his north lake in such a manner as to reduce the water level thereon two (2) feet so that the drainage line from the canal heretofore mentioned will properly drain into his north lake.

"It being understood that as consideration for the execution of this instrument and the granting of this easement, party of the first part (plaintiff) will be entitled to the water coming from said drainage tile without cost or expense to him."

Plaintiff's "north lake" is on the north of the city's canal and at a distance of about 500 feet.

Pursuant to the contract, the city constructed a tile drain from the canal to plaintiff's north lake. Plaintiff lowered the spillway of said lake, as provided in the contract.

Thereafter a demand arose for water for oil field purposes, and on or about May 31, 1944, the city, as first party, entered into a written contract with Anderson-Prichard Oil Corporation whereby the city agreed to sell to Anderson-Prichard Oil Corporation, water to be taken from the canal. That contract provides:

". . . that second party shall have exclusive right to all raw water taken from the under-drain of said canal to be taken at the point above described, subject to releasing a sufficient quantity of water into a certain lake or pond, owned by W. A. Reust, located approximately 500 feet north of Station 154 plus 40, to keep said lake or pond substantially filled to its present capacity, provided the condition of said lake or pond shall be maintained in as good or better condition for retaining said water as it is at the date of this contract; and provided that the water retained in said lake or pond is not depleted by any new or additional use."

It was estimated that approximately 23,000 gallons of water per day would be required to keep the north lake full to its capacity.

Pursuant to the latter contract, Anderson-Prichard made the connection at the point designated and thereafter took water of the total value, at the contract price, of $4,729.25. Of that amount, Anderson-Prichard had paid the city $580 and held in its hands, after the controversy arose, the balance of the purchase price, subject to final judgment of the court as to whether plaintiff or the city was entitled.

Plaintiff, after claim and demand, commenced this action to recover the amount which had been paid to the city and to require Anderson-Prichard to pay to plaintiff all sums under the contract, due and to become due.

Anderson-Prichard answered setting up its contract with the city and its good faith in entering into the contract; its payment to the city of $580.80 under the contract and its willingness to make further payments to the rightful owner.

The city, in answer, relied upon terms of its contract with plaintiff, the mutual intention of plaintiff and the city to provide a satisfactory method of underground drainage for the canal and to provide plaintiff with sufficient water to maintain plaintiff's north lake at capacity level, without cost to him, and alleged that the city had at all times since the construction of the tile drain provided water from the canal to maintain plaintiff's lake at capacity level.

Issues joined by plaintiff's reply were tried to the court, resulting in a judgment for defendants; plaintiff appeals.

There is but one question involved: Who is the owner of the underdrainage water sold to Anderson-Prichard and taken by it at a point on the city's land before it entered the drain tile on plaintiff's land?

Plaintiff admits the contract gives the city a perpetual right of way to lay and maintain the water drainage line from the canal to the north lake on plaintiff's land, but contends his right is derived from words of the contract which read:

"It being understood that as consideration for the execution of this instrument, party of the first part (plaintiff) will be entitled to the water coming from said drainage tile without cost to him."

Plaintiff relies upon the meaning of the words "entitled to" as used in the contract, and asserts that the words as used give to plaintiff right to demand and receive "the water coming from said drainage tile." People's Trust Co. v. Smith, 30 N. Y. Supp. 342; Nation v. Tully, State Treas., 86 Kan. 564, 121 P. 507. The city does not contend for a different meaning. The difference between the plaintiff and the city is as to what was meant by the words "water

coming from said drainage tile." Plaintiff contends that "said drainage tile" means the drainage tile which was laid for about 1,000 feet down the canal, as well as the drainage tile which runs across plaintiff's land. The city contends that the words "water from said drainage tile" refer to the water which flows through the tile placed on plaintiff's land under the contract, and that plaintiff is entitled to and becomes the owner of only that water which flows from the tile drain into plaintiff's lake.

The evidence shows, and the trial court found, that the drainage water involved comes from the land west and beyond plaintiff's land "and it will not be presumed that this water would have, in the natural flow, reached his property, in the absence of positive evidence to that effect."

The trial court concluded:

"It is my opinion that title to the water did not rest in the plaintiff until it had flowed from the pipe into his lake."

Judgment was rendered accordingly.

Whether the words used in plaintiff's contract may be construed to mean either the water coming through the drain tile on plaintiff's land, or the water coming from the drainage tile in the canal through the entire distance covered by the water-bearing formation, must be determined, if possible, from the language used in the contract; if the meaning is not clear from the language of the contract, the facts and circumstances existing at the time of the contract may be considered.

The language used in the contract can have but one meaning, and that is as held by the trial court. The contract provides that plaintiff does ". . . grant and convey to the city of Oklahoma City . . . an easement and right of way over and across . . . the southeast quarter (S.E.¼) of section 32, . . . for the purpose of erecting, maintaining and operating . . . a tile water drainage line to drain water from the canal that runs across said property and other proper-

ties to a point on said quarter section where party of the first part (plaintiff) has located a lake." Clearly, the drainage tile line was to run across plaintiff's land from the canal to the lake on plaintiff's land and that line only was the subject covered by the contract. Plaintiff had nothing whatever to do with the construction, or the right to construct, the water-gathering line within the canal proper. The city had already acquired the right to construct that part of the drainage system under condemnation proceedings. The drainage tile, as such, lying within the canal proper is not mentioned in the contract. The canal is designated in the contract only to note the source of the water to be drained and the place of beginning of the tile drain to be constructed and maintained on plaintiff's land. The plaintiff was given title to only the water coming from the drainage tile on plaintiff's land. By the contract, the city is not obligated to send all the water gathered in its underdrainage system in the canal through the drainage line constructed on plaintiff's land. The city has recognized that plaintiff is entitled to receive, through the drainage tile so constructed, sufficient water to keep plaintiff's north lake full to capacity. Plaintiff has received enough water to keep his lake filled to its capacity, and overflowing. That was the benefit plaintiff contracted to receive. The city is the owner of all the water collected in the underdrainage system in the canal so long as it does not enter into and flow through the drainage tile line on plaintiff's land. The water sold by the city to Anderson-Prichard was diverted from the city's underdrainage system on the city's land. That water did not flow through the drainage line on plaintiff's land. By the judgment, plaintiff has no right to the water sold nor the proceeds of the sale.

Affirmed.

DAVISON, V.C.J., and OSBORN, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur.